IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **SHEILA SCHIAFFINO** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | Civil Action No.: CBD-14-3643 |
| | * | |
| **IKEA U.S. EAST, LLC,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |
| | ***** | |

## MEMORANDUM OPINION

Before this Court is Defendant IKEA U.S. East, L.L.C.'s Partial Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment (ECF No. 22) ("Defendant's Motion") and the opposition thereto. The Court has reviewed Defendant's Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court **GRANTS** Defendant's Motion.

**I.    Factual Background**

Ms. Sheila Schiaffino ("Plaintiff") contends that on November 16, 2013, she left her minor child in the care of IKEA, U.S. East, L.L.C. ("Defendant" or "IKEA") at an in-store play center called "Småland." Plaintiff's child allegedly slipped and fell, sustaining injuries to his teeth and chin. Plaintiff asserts that IKEA was negligent in its construction of Småland and its supervision of her child. Plaintiff specifically claims:

Count I: Negligence;
Count II: Defective design, manufacturing, labeling, strict product liability;
Count III: Defect in labeling warnings – strict product liability;

1

>Count IV: Abnormally dangerous activity, reckless and wanton conduct – strict product liability;
>Count V: Breach of warranty; and
>Count VI: Respondeat superior liability.

Pl.'s Compl. 5-12.

In Defendant's Motion, IKEA argues that this Court should either dismiss or grant partial summary judgment as to Plaintiff's product liability claims (claims II, III, IV, and V) because Plaintiff has not demonstrated that any product was responsible for her child's injuries. Defendant also argues that Plaintiff has not provided sufficient evidence to survive a motion for summary judgment as to strict liability. Defendant's Motion includes an affidavit by IKEA manager Jason Benson in which Mr. Benson alleges that the "Småland play area is . . . and was on the day of the incident . . . a service," and that "[t]he Småland play area, and its components, is not, and was not at the time of the incident . . . marketed as a product for sale by IKEA, and is a fixture on the property." Jason Benson's Aff. 1 (herineafter Benson Affidavit), ECF No. 22-2.

In Plaintiff's opposition to Defendant's Motion, she argues that Småland is a product and that Defendant's Motion should be denied. Plaintiff did not include any exhibits in support of her opposition.

## II.     Standard of Review

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). If while moving for dismissal under Federal Rule of Civil Procedure 12(b)(6) a party presents "matters outside the pleadings" that are "not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). This is the situation in the present case.

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Fourth Circuit has explained that a genuine dispute exists where "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citation omitted). The Supreme Court has explained that "[a]s to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Analysis

#### A. Defendant's Motion Will be Treated as One for Summary Judgement

As a threshold matter, this Court must determine whether Defendant's Motion is a motion to dismiss or a motion for summary judgment. The Fourth Circuit has explained that the purpose of a motion to dismiss "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of a defense." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation omitted). As such, where a party provides exhibits not included in the pleadings and the court reviews those exhibits, "the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). The court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). This Court has previously provided three factors to consider in determining whether to exercise its discretion to convert a motion to dismiss into a

motion for summary judgment.  First, "[t]his discretion should be exercised with great caution and attention to the parties procedural rights." *Id.*  Second, courts should consider whether conversion "is likely to facilitate the disposition of the action." *Id.*  Finally, courts should assess "whether discovery prior to the utilization of the summary judgment procedure is necessary." *Id.*

Turning to the first consideration outlined in *Sager*, the Court finds that the parties' procedural rights have been protected.  As the Court noted in *Sager*, when "the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur" as "the court does not have an obligation to notify parties of the obvious." *Sager*, 855 F. Supp. 2d at 542.  Defendants' Motion is captioned as one for dismissal or in the alternative for summary judgement.  Plaintiff was thus on notice that she should provide any exhibits to contest a motion for summary judgment in her opposition.[1]  Thus, Plaintiff's procedural rights have been protected.  Reviewing the second factor, treating Defendant's Motion as one for summary judgment will facilitate the disposition of the action by allowing this Court to review the exhibits presented.  Finally, as to the third factor, additional discovery is not necessary prior to ruling on Defendant's Motion.  Discovery in this case closed on April 16, 2015 – two weeks before Plaintiff's opposition was due.  If Plaintiff needed additional time for discovery or to prepare her opposition, she could have requested an extension.  As no extension was requested, this Court can only assume none was needed. *See Sager*, 855 F. Supp. 2d at 542 ("the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time is needed for discovery") (citation omitted).  For the

---

[1] In addition, Plaintiff was provided with more than twice the permissible amount of time to submit her opposition.  Defendant's Motion was filed on March 23, 2015, and Plaintiff's opposition was due April 9, 2015.  Plaintiff obtained permission to file her opposition by May 1, 2015.

4

foregoing reasons, this Court will exercise its discretion to treat Defendant's Motion as one for summary judgment.

### B. Summary Judgment is Granted as to Claims II, III, and V as There is No Genuine Dispute that Plaintiff is a "User" or that Småland is a "Product"

Plaintiff's claims for "defective design" (Count II), "defect in labeling" (Count III), and "breach of warranty" (Count V) rely on theories of strict products liability. Pl.'s Compl. 7-12. As this Court has explained,

> "[t]o recover on a theory of strict liability in Maryland, a plaintiff must establish that:
> (1) the plaintiff was the user or consumer of an alleged[ly] defective product;
> (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product;
> (3) at the time of sale the product was defective;
> (4) the product reached the plaintiff without substantial change in the condition in which it was sold;
> (5) the defect made the product unreasonably dangerous to the plaintiff; and
> (6) the defect proximately caused plaintiff's injuries."

*Tannebaum v. Yale Materials Handling Corp.*, 38 F. Supp. 2d 425, 430 (D. Md. 1999) (citation omitted).

There is insufficient evidence on which a reasonable jury could determine that Plaintiff's child was a "user" of an allegedly defective product as that term is used in product liability cases. Plaintiff interprets Maryland case law to suggest that the term "'[u]ser' is understood broadly to include all persons that use the product, actively and passively." Mem. in Opp'n 3 (citing *Phipps v. General Motors Corp.*, 278 Md. 337, 341 (1976)). However, the Maryland Special Court of Appeals has explained that the term "user" must be understood in reference to the definition of the term "consumer." Specifically, "[a] 'consumer' is defined as one who purchases a product" and "'[u]sers' are categorized as those who passively enjoy the benefit of the product." *Valk Mfg. Co. v. Rangawamy*, 537 A.2d 622, 629 (Md. Ct. Spec. App. 1988) (citation omitted) (rev'd

on other grounds *Montgomery Cty. v. Valk Mfg. Co.*, 562 A.2d 1246 (Md. 1989)). Thus, in order to be a user, one must use a product purchased by a consumer.[2]

Defendant's Motion includes exhibits showing that Småland has never been sold or distributed commercially to consumers and is not available for sale or commercial distribution. Specifically, the Benson Affidavit alleges that "[t]he Småland play area, and its components, is not, and was not at the time of the incident . . . marketed as a product for sale by IKEA, and is a fixture on the property." Benson Aff. 1. Plaintiff has not provided any evidence suggesting that Småland is or ever has been available for sale or distribution. There is no genuine dispute as to whether Småland was sold or distributed. As such, there is not sufficient evidence on which a reasonable jury could find that Plaintiff's child was a "user" of Småland, as that term is defined.

In addition, Plaintiff has provided no evidence in support of her contention that Småland is a "product." Instead, Plaintiff has argued that because "there was a transaction between Plaintiffs and Defendant . . . for the 'use' of" Småland," it is a product. Mem. in Opp'n 4. As discussed above, for tangible property to qualify as a "product," it must be purchased and/or distributed commercially.

Because there is insufficient evidence for a reasonably jury to find that Småland is a product, there is also insufficient evidence to find that Plaintiff could establish the second, third, fourth, or fifth elements of her strict products liability claims. For the foregoing reasons, Defendant is entitled to judgment as a matter of law as to claims II, III, and V.

---

[2] Although it has not been adopted, the Third Restatement of Torts provides persuasive guidance that bolsters the notion that a product is "tangible personal property *distributed commercially* for use or consumption." Restatement (Third) of Torts, Products Liability § 19 (1998) (emphasis added). Under this definition, to be a user, one must use tangible property that is distributed commercially.

### C. Summary Judgment is Granted as to Claim IV as There is Not a Genuine Dispute that Playing in Småland is an Abnormally Dangerous Activity

Plaintiff's fourth claim is that Defendant should be held liable for the injuries to Plaintiff's child because allowing children to play in Småland constitutes an abnormally dangerous activity. The Maryland Court of Special Appeals has explained that an individual "who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Gallagher v. H.V. Pierhomes, L.L.C.*, 957 A.2d 628, 634 (Md. Ct. Spec. App. 2008) (citing and adopting Restatement (Second) of Torts § 519 (1977). "[T]he following factors [should] be considered in determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of some harm to the person, land or chattels of another;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.*

Plaintiff has provided no evidence to satisfy any of the *Gallagher* factors. Plaintiff has made no effort to demonstrate that there was a high likelihood that injury would occur at Småland, that the risk of injury could not be mitigated, that the activities children at Småland were encouraged to engage in were uncommon, that Småland was an inappropriate location for these activities, or that the dangers Småland presented outweigh Småland's benefit to the community. Accordingly, I find that there is insufficient evidence for a reasonable jury to find that Defendant was engaged in an "abnormally dangerous activity."

**IV.     Conclusion**

       For the foregoing reasons, the Court **GRANTS** Defendant's Motion and enters judgment in Defendant's favor as to Claims II, III, IV, and V.


June 30, 2015                                                                     /s/
                                                                               Charles B. Day
                                                                               United States Magistrate Judge

CBD/sdh